# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| WACO TOWN SQUARE PARTNERS, § | Bankruptcy Case No. 11-38928 | |
| LP, *et al.*, § | Adversary No. 12-3144 | |
|     Debtors. § | | |
| ---------------------------------------------------------------------------------------------- | | |
| NSJS LIMITED PARTNERSHIP, § | | |
|     Appellant, § | | |
| § | | |
| v. § | **CIVIL ACTION NO. H-15-0485** | |
| § | | |
| WACO TOWN SQUARE PARTNERS, § | | |
| LP, *et al.*, § | | |
|     Appellees. § | | |

## **MEMORANDUM AND ORDER**

Non-debtor NSJS Limited Partnership ("NSJS") filed a Notice of Appeal [Doc. # 1] from the Memorandum Opinion ("2015 Opinion") [Doc. # 204 in BR 11-38928] and Order ("2015 Order") [Doc. # 205 in BR 11-38928] entered February 11, 2015, requiring NSJS to dismiss a lawsuit pending in the 414th Judicial District Court of McLennan County, Texas ("State Court Lawsuit").

NSJS filed its Opening Brief [Doc. # 12] on July 10, 2015. Debtors Waco Town Square Partners, LP ("WTSP") and Waco Town Square Partners II, LP ("WTSP II") failed to file an Appellees' Brief. Instead, Appellee Community Bank & Trust

("Community Bank") filed the only Appellee's Brief [Doc. # 13].[1]  NSJS filed a timely Reply Brief [Doc. # 14].  Having reviewed the full record and the applicable legal authorities, the Court **reverses** and **vacates** the Bankruptcy Court's 2015 Opinion and 2015 Order requiring NSJS to dismiss the State Court Lawsuit.

## I. BACKGROUND

NSJS was formed in 1998 by Sherry Bryan, James Bonnett, and Susan Bonnett after their father, Norman Bonnett, suffered a debilitating stroke and was unable to manage his affairs.  NSJS was formed to manage Norman Bonnett's real estate holdings and to generate income to provide for his care.

In August 2008, NSJS invested $200,000.00 in WTSP II, a company formed to conduct a second phase of a real estate development in Waco, Texas, by Wallace Bajjali Development Partners ("Wallace Bajjali").  David Wallace, a partner in Wallace Bajjali, and Michael Wray were responsible for obtaining investors in WTSP II, including NSJS.  In exchange for its investment, NSJS received 2,083.33 units in WTSP II.  Section 3.08 of the Agreement of Limited Partnership ("Agreement") provided that NSJS had the right to redeem its interest and receive a full refund of its

---

[1]   In its Reply Brief, NSJS argues that Community Bank lacks standing to participate in this appeal.  The Notice of Appeal, however, identifies Community Bank as a party to the order on appeal.  *See* Notice of Appeal [Doc. # 1-1].  As a result, Appellee Community Bank has standing to file an Appellee's Brief.

initial investment plus a Preferred Return of 10%.  The Agreement provided further that cash or other proceeds from the sale of property would not be distributed by the general partner "except for distributions to NSJS in connection with the redemption of NSJS units described in Section 3.08."

In 2009, NSJS discovered that Wallace Bajjali had invested no cash in WTSP II, and that WTSP II had pledged its real property as collateral for a loan to WTSP.  In 2010, WTSP II's only asset was sold to Community Bank, which in turn lent the proceeds to WTSP, which in turn paid the money back to Community Bank to reduce WTSP's indebtedness of more than $7 million.  The interest rate for the remaining debt to Community Bank was reduced from 6.5% to 4.5%.

On July 30, 2010, NSJS tried unsuccessfully to exercise its redemption rights under the Agreement.  Because WTSP II had used its assets to reduce WTSP's indebtedness to Community Bank, there were no funds to pay NSJS the redemption value of its units.

On November 18, 2010, NSJS filed the State Court Lawsuit against Wallace, Wray, WTSP II, Community Bank, and others.  On October 12, 2011, NSJS filed a First Amended Complaint adding Wallace Bajjali as a Defendant.  On October 21, 2011, WTSP and WTSP II filed for bankruptcy protection under Chapter 11.  The Chapter 11 cases of WTSP and WTSP II were jointly administered by Order [Doc.

# 13 in BR 11-38928] entered October 27, 2011.  On November 21, 2011, WTSP II removed the State Court Lawsuit to the Bankruptcy Court for the Western District of Texas, where it was docketed as Adversary Number 11-6025, and assigned to United States Bankruptcy Judge Craig Gargotta.

On February 16, 2012, the Bankruptcy Court in the Western District remanded the State Court Lawsuit to state court.  Bankruptcy Judge Gargotta, in a two-page Order, found that mandatory abstention was proper and that the adversary case should be remanded to state court.  Judge Gargotta denied a related motion to transfer the adversary case to the Southern District of Texas.  On February 23, 2012, WTSP II filed a Motion for Reconsideration, arguing that remand was improper because the State Court Lawsuit included claims that were derivative and, therefore, property of the bankruptcy estate.

On April 24, 2012, NSJS filed its Objection to Confirmation of Third Amended Joint Chapter 11 Plan of Reorganization ("Objection") [Doc. # 79 in BR 11-38928]. In its Objection, NSJS objected to paragraph 13.9 of the proposed Plan because the Plan "should not act to curtail, limit or in any way proscribe any claim or cause of action which [NSJS] may have now pending or may seek to assert against Community Bank & Trust . . .."  *See* Objection, ¶ 5.  Paragraph 13.9 of the Plan provided that all lawsuits in which claims are asserted against the Debtors shall be dismissed with

prejudice "as to the Debtors."  *See* Plan [Doc. # 67 in BR 11-38928], ¶ 13.9.  NSJS specifically requested that any Confirmation Order provide clearly that it did not release, bar, proscribe, limit or otherwise affect any cause of action by NSJS against Community Bank & Trust and others, and that the "mandated dismissal of actions described in paragraph 13.9 of the Plan do not apply to such claims" against Community Bank & Trust and others named in the Objection.  *See* Objection, ¶ 6.

On May 20, 2012, the Bankruptcy Court in the Southern District entered the Confirmation Order in Case No. 11-38928.  Because the Confirmation Order appeared to protect NSJS's claims against Community Bank & Trust and other non-debtors, counsel for NSJS signed as agreeing to its terms.  The Confirmation Order provided that:

> To the extent that NSJS holds any claims, plead [*sic*] or unplead [*sic*], belonging to it and not to the Debtors or their respective estates, against any person or entity, other than the Debtors or their estates, NSJS may pursue such claims and nothing in this Order shall bar, enjoin, limit or impair NSJS from pursuing such claims.  Further, within forty-five (45) days of the entry of this Order, NSJS shall amend its complaint in Adversary Proceeding No. 11-06025 . . . pending in the United States Bankruptcy Court for the Western District of Texas, Waco Division . . . to remove any and all [derivative claims] arising on or before the Confirmation Date . . ..  If an Amended Complaint is not filed within the time period proscribed in this Order, all claims contained in the NSJS Lawsuit shall be deemed [derivative claims] and must be immediately dismissed with prejudice in accordance with Article 13.9 of the Plan.

Confirmation Plan [Doc. # 89 in BR 11-38928], ¶ 22. The Confirmation Plan provided that, if NSJS filed a timely amended complaint with no derivative claims, "the parties agree to request that the NSJS Lawsuit be remanded to the state court where it was originally filed." *Id.*, ¶ 23.

On June 4, 2012, fifteen days after entry of the Confirmation Plan, the Bankruptcy Court in the Western District denied WTSP II's Motion for Reconsideration challenging that court's prior order remanding the Adversary Case (*i.e.*, the State Court Lawsuit). The Western District Bankruptcy Court held that the claims in the State Court Lawsuit were non-core. *See* Western District Bankruptcy Court Order, NSJS Exh. 2 [Doc. # 126 in BR 11-38928], p. 7. Additionally, the Western District Bankruptcy Court held for the first time that the claims in the State Court Lawsuit were not property of the bankruptcy estate because the claims did "not appear to meet the definition of a derivative action, either in form or in substance." *See id.* at 10. Notice of Judge Gargotta's decision was mailed on June 6, 2012, and the Western District Adversary Case was officially closed on June 20, 2012. As a result, the Western District Adversary Case was remanded before the expiration of the 45-day period for NSJS to file an amended complaint. Following remand in June 2012, the Adversary Proceeding referenced in the Confirmation Order was no longer pending in the Bankruptcy Court in the Western District of Texas.

On November 7, 2012, counsel for WTSP II advised counsel for NSJS that the State Court Lawsuit had to be dismissed in its entirety because NSJS did not file an amended complaint by the deadline set forth in the Confirmation Plan.  NSJS continued to assert, as Judge Gargotta had held in June 2012, that the First Amended Complaint in the Western District Adversary Case (and the State Court Lawsuit) contained no derivative claims.  Nonetheless, on December 14, 2012, NSJS filed a Second Amended Complaint in the remanded State Court Lawsuit, removing WTSP II as a defendant and deleting those claims that WTSP II argued were derivative.  At that point, the State Court Lawsuit contained no claims that were derivative, even arguably, and involved only a non-debtor suing non-debtors.

On January 1, 2013, Debtors WTSP and WTSP II filed a Motion to Hold NSJS in Contempt and for Sanctions.  At that point, neither WTSP nor WTSP II was a party to the State Court Lawsuit, and all claims they believed were derivative had been deleted.  The Bankruptcy Court in the Southern District held an evidentiary hearing on May 29, 2013.  On July 23, 2013, the Southern District Bankruptcy Court issued its decision denying Debtors' Motion to Hold NSJS in Contempt and for Sanctions. Additionally, however, the Court ordered NSJS (a non-debtor) to dismiss its State Court Lawsuit, which at that time was governed by the Second Amended Complaint that asserted only non-derivative claims against non-debtors.

NSJS filed a Notice of Appeal to this Court from the Order requiring it to dismiss the State Court Lawsuit. By Memorandum and Order ("2014 Memorandum and Order") [Doc. # 17] entered March 13, 2014 in Civil Action No. H-13-2374, this Court affirmed the denial of WTSP and WTSP II's Motion to hold NSJS in Contempt and remanded to the Bankruptcy Court for further consideration of its requirement that NSJS dismiss the State Court Lawsuit. This Court noted that the basis for the Bankruptcy Court's jurisdiction to issue the challenged order was questionable, that the Confirmation Order requirements were ambiguous and internally inconsistent, and that there was evidence in the record that could indicate that NSJS's failure to file an amended complaint by the 45-day deadline was the result of excusable neglect.

In its 2015 Opinion [Doc. # 204 in BR 11-38928] and 2015 Order [Doc. # 205 in BR 11-38928], the Bankruptcy Court again ordered NSJS to dismiss the State Court Lawsuit. NSJS filed a timely Notice of Appeal. All issues have been fully briefed and the appeal is now ripe for decision.

## II.  STANDARD OF REVIEW

The Court "reviews a bankruptcy court's findings of fact under the clearly erroneous standard and decides conclusions of law *de novo*." *In re Whitley*, 737 F.3d 980, 985 (5th Cir. 2013) (citing *Barron v. Countryman*, 432 F.3d 590, 594 (5th Cir. 2005)). Mixed questions of law and fact are reviewed *de novo*. *In re Quinlivan*, 434

F.3d. 314, 318 (5th Cir. 2006); *In re Stonebridge Technologies, Inc.*, 430 F.3d 260, 265 (5th Cir. 2005).

Matters within a bankruptcy judge's discretion are reviewed for an abuse of discretion. *See In re Gandy*, 299 F.3d 489, 494 (5th Cir. 2002). A bankruptcy court abuses its discretion when it applies an improper legal standard or bases its decision on findings of fact that are clearly erroneous. *In re Crager*, 691 F.3d 671, 675 (5th Cir. 2012); *In re Lothian Oil, Inc.*, 531 F. App'x 428, 445 (5th Cir. May 8, 2013) (citing *Conner v. Travis Cnty.*, 209 F.3d 794, 799 (5th Cir. 2000)).

### III. BANKRUPTCY COURT'S JURISDICTION

The Bankruptcy Court held that it had jurisdiction to order NSJS to dismiss the State Court Lawsuit pursuant to its inherent authority to issue orders that are "necessary or appropriate to carry out the provisions of" Title 11 of the United States Code. *See* 11 U.S.C. § 105(a). A bankruptcy court's statutory power under § 105(a) is not unlimited. *See In re Amco Ins.*, 444 F.3d 690, 695 (5th Cir. 2006) (citing *Mirant Corp. v. Potomac Elec. Power Co.*, 378 F.3d 511, 523 (5th Cir. 2004)). Indeed, the Bankruptcy Court recognized in this case that its jurisdiction must be evaluated in accordance with *Stern v. Marshall*, ___ U.S. ___, 131 S. Ct. 2594 (2011).[2]

---

[2] In *Stern*, the Supreme Court held that bankruptcy courts lack constitutional authority
(continued...)

The Bankruptcy Court began the *Stern* analysis by noting its authority to issue a final order regarding claims brought against Debtors and claims that were property of the bankruptcy estate. Specifically, the Bankruptcy Court held that it "had constitutional authority to issue the Confirmation Order to the extent it required dismissal of claims which were the property of the bankruptcy estate." 2015 Opinion, p. 9. NSJS and this Court agree that the Bankruptcy Court has such authority. In this case, however, the Bankruptcy Court has twice ordered NSJS to dismiss a State Court Lawsuit that involves *only* non-derivative claims by a non-debtor against a non-debtor. There are no claims in the State Court Lawsuit against Debtors and there are no claims that are property of the bankruptcy estate. As a result, the Bankruptcy Court lacked authority to issue the Order requiring NSJS to dismiss the State Court Lawsuit.

The Bankruptcy Court held further, however, that NSJS cannot challenge jurisdiction because it failed to appeal entry of the Confirmation Order. In support of this holding, the Bankruptcy Court cites decisions regarding collateral attacks on final orders that should have been challenged on direct appeal. The Bankruptcy Court

---

2   (...continued)
to enter final orders on certain counterclaims, even where the court has statutory authority. *See Stern*, 131 S. Ct. at 2620. After *Stern*, it is questionable whether a bankruptcy court's power under § 105(a) extends to requiring the dismissal with prejudice of "state law causes of action by non-debtors against non-debtors." *See Special Value Continuation Partners, L.P. v. Jones*, 2011 WL 5593058, *6 (Bankr. S.D. Tex. Nov. 10, 2011).

relies heavily on an unpublished case from the Ninth Circuit, *In re Sunra Coffee, LLC*, 2012 WL 3590754 (9th Cir. BAP Aug. 21, 2012). In that case, a state court entered a default judgment against Sunra Coffee, LLC ("Sunra") and its guarantor on a debt owed to Hawaii National Bank ("HNB"). Sunra then filed a Chapter 11 petition. The Chapter 11 Trustee removed the state court proceeding and served the notice of removal on the guarantor, who did not oppose removal. After the property was sold at auction, HNB sought entry of a deficiency judgment against Sunra and the guarantor. Neither Sunra nor the guarantor filed an opposition to HNB's request. As a result, on September 23, 2010, the bankruptcy court entered a final deficiency judgment against Sunra and the guarantor in the amount of $2,405,247.82. The final deficiency judgment was neither appealed nor otherwise challenged by Sunra or the guarantor. On March 7, 2011, HNB sought entry of a charging order against an asset of the guarantor for satisfaction of the final deficiency judgment. At an evidentiary hearing on July 5, 2011, the guarantor sought to challenge the bankruptcy court's jurisdiction to enter the final deficiency judgment. The Ninth Circuit BAP held that it was too late to assert the jurisdictional challenge. The *Sunra* case does not support the Bankruptcy Court's Order in this case.

Here, unlike the $2,405,247.82 judgment against the guarantor in *Sunra*, the Confirmation Order was not an adverse ruling from which NSJS would or should be

expected to appeal. Instead, the Confirmation Order required NSJS to file an amended complaint dismissing derivative claims from the Adversary Case within forty-five days. NSJS had no jurisdictional or other challenge to this aspect of the Confirmation Order. Fifteen days later, the Western District Bankruptcy Court held that there were no derivative claims in the Adversary Case and remanded it to state court. When Debtors filed their Motion to Hold NSJS in Contempt and for Sanctions seeking dismissal of the State Court Lawsuit, NSJS raised the jurisdictional issues inherent in such a dismissal – jurisdictional issues that were not apparent in the Confirmation Order itself. It was only when the Bankruptcy Court issued the Order requiring NSJS to dismiss the State Court Lawsuit that NSJS suffered an adverse ruling, and NSJS filed its direct appeal from that Order in a timely manner. NSJS's failure to appeal separately from the Confirmation Order, which was not clearly beyond the Bankruptcy Court's jurisdiction, did not constitute a waiver of NSJS's right to challenge the Bankruptcy Court's jurisdiction to enter the 2015 Order requiring dismissal of the State Court Lawsuit.

Community Bank argues that the Bankruptcy Court had jurisdiction by consent, citing *Wellness Int'l Network, Ltd. v. Sharif*, __ U.S. __, 135 S. Ct. 1932 (2015). In *Wellness*, the Supreme Court held that bankruptcy courts have authority to decide *Stern*-type claims submitted to them by consent. The Supreme Court emphasized,

however, that the consent must be given knowingly. The Supreme Court held that "the key inquiry is whether the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily" consented. *Id.*; *see also In re TPG Troy, LLC,* 793 F.3d 228, 231 (2d Cir. 2015) (counsel stated on the record that he and his client "would be content to consent" to the Bankruptcy Court trying and deciding the issue of attorneys' fees). In the case before this Court, NSJS clearly consented to entry of the Confirmation Order, including paragraph 22. It did not, however, give knowing consent to entry of an Order requiring it to dismiss with prejudice the State Court Lawsuit which, at the time the 2015 Order was entered, involved only non-derivative claims by a non-debtor against non-debtors. For the same reasons discussed above in connection with the waiver issue, NSJS's decision not to appeal entry of the Confirmation Order did not constitute knowing consent to entry of the challenged Order.

Community Bank argues also that NSJS's decision to file an amended pleading in state court, dismissing all claims against Debtor WTSP II and all claims that Debtors suggested were derivative, constituted knowing consent for the Bankruptcy Court to issue the 2015 Order requiring dismissal of the State Court Lawsuit. This argument is unpersuasive. NSJS's second amendment was an effort to appease Debtors and remove an lingering doubt that the State Court Lawsuit involved only

non-derivative claims by a non-debtor against non-debtors. NSJS did not, either by agreeing to entry of the Confirmation Order or by filing its Second Amended Complaint, give knowing consent authorizing the Bankruptcy Court to enter the challenged 2015 Order.

The Bankruptcy Court in its Memorandum Opinion recognized that it was "doubtful that this Court had constitutional authority to issue a Confirmation Order which required dismissal of NSJS's state-law claims against Community Bank." *See* 2015 Opinion, p. 9. When it issued its July 23, 2013 Order and its February 11, 2015 Order requiring NSJS to dismiss its state-law claims against Community Bank, it acted without jurisdiction and the 2015 Order is reversed and vacated.[3]

## IV.   CONFIRMATION ORDER REQUIREMENTS

The Bankruptcy Court bases its 2015 Order on the Confirmation Order, which the Bankruptcy Court describes as "self-executing." *See* 2015 Opinion, p. 7. The 2015 Order at issue in this appeal, however, is not supported by the terms of the Confirmation Order.

After NSJS objected to entry of a confirmation order that did not protect its non-derivative claims in the State Court Lawsuit (removed as the Adversary Case in

---

[3] Although the Bankruptcy Court's February 11, 2015 Order is subject to reversal for lack of jurisdiction, the Court will address remaining issues on appeal in order to provide a full and complete decision.

the Western District of Texas Bankruptcy Court), the Confirmation Order included a provision that allowed NSJS to pursue its non-derivative claims, providing unequivocally that "nothing in this Order shall bar, enjoin, limit or impair NSJS from pursuing such claims."  The Confirmation Order did not "bar, enjoin, limit or impair NSJS from pursuing" the claims in the Adversary Case's First Amended Complaint because the Western District Bankruptcy Court had held the claims were direct and non-derivative.  Therefore, the Bankruptcy Court's 2015 Order did not enforce the provisions of the Confirmation Order that protected NSJS's right to pursue its non-derivative claims.

The Bankruptcy Court supports its 2015 Order by citing to NSJS's purported failure to comply with the Confirmation Order provision that "within forty-five (45) days of the entry of this Order, NSJS shall amend its complaint in Adversary Proceeding No. 11-06025 . . . pending in the United States Bankruptcy Court for the Western District of Texas, Waco Division . . . to remove any and all [derivative claims] arising on or before the Confirmation Date . . .." *See* 2015 Opinion, p. 13. The record establishes unequivocally that there was no "Adversary Proceeding No. 11-06025 . . . pending in the United States Bankruptcy Court for the Western District of Texas, Waco Division" by the time the forty-five day period expired in which NSJS

could file an amended complaint as contemplated by the Confirmation Order. Consequently, NSJS was unable to comply with the terms of the Confirmation Order.

Additionally, before the forty-five day period expired, the Western District Bankruptcy Court determined in a written order that the First Amended Complaint in the Adversary Case contained no derivative claims that NSJS could delete, and NSJS was bound by that order. Consistent with Judge Gargotta's ruling, NSJS has steadfastly maintained that its State Court Lawsuit contained no derivative claims. Indeed, the First Amended Complaint at the time of the remand in June 2012 was specifically deemed by the Western District Bankruptcy Court to contain only NSJS's direct, non-derivative claims. In December 2012, in an abundance of caution, NSJS filed a Second Amended Complaint in the State Court Lawsuit, removing WTSP II as a defendant and deleting those claims that Debtors had argued were derivative. At that point, it was indisputable that the State Court Lawsuit involved only non-derivative claims by a non-debtor against non-debtors.

Even if it were a violation of the Confirmation Order to fail to file an amended complaint in a closed adversary case to delete derivative claims that the Bankruptcy Court presiding over that adversary case had held did not exist, the effect of that violation was that the claims "must be immediately dismissed with prejudice in accordance with Article 13.9 of the Plan." *See* Confirmation Order, ¶ 22. Article 13.9

of the Plan provides in relevant part that "all lawsuits . . . in connection with the assertion of Claims *against the Debtors* . . . shall be dismissed *as to the Debtors*. Such dismissal shall be with prejudice . . .." *See* Plan [Doc. # 67 in BR 11-38928], ¶ 13.9 (emphasis added). At the time the July 2013 and the February 2015 Orders were entered, there was no lawsuit containing the assertion of claims against the Debtors. Moreover, Article 13.9 requires dismissal with prejudice "as to the Debtors," not as to non-debtor defendants such as Community Bank.

The Confirmation Order, which the Bankruptcy Court agreed "contains ambiguities," does not support entry of the July 2013 Order or the February 2015 Order. On this basis also, the challenged February 2015 Order is reversed and vacated.

V.  **EXCUSABLE NEGLECT**

The Bankruptcy Court held that NSJS's failure to file an amended complaint to remove derivative claims was not the result of excusable neglect. The "excusable neglect" determination is fundamentally "an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). The relevant factors include "[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including

whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Id.* In this case, the Bankruptcy Court evaluated each of the relevant factors in the "excusable neglect" analysis, and found that the danger of prejudice to debtors, the length of the delay, and the good faith factors each weighed in NSJS's favor. *See* 2015 Opinion, p. 15. The Bankruptcy Court then rejected NSJS's explanation of the reason for the delay and, on that basis, held that there was no excusable neglect. The Bankruptcy Court's finding on this "reason for the delay" factor, however, is clearly erroneous because it is based on an inaccurate chronology of the proceedings in the Bankruptcy Courts in the Southern District of Texas and in the Western District of Texas.

NSJS based is claim of excusable neglect on the ambiguities in the Confirmation Order and on its reliance on Judge Gargotta's ruling that the First Amended Complaint did not contain derivative claims. Although the Bankruptcy Court correctly noted that if the requirements in the Confirmation Order were "dramatically ambiguous, then NSJS would have been justified in failing to meet those requirements," the Bankruptcy Court held that the ambiguities were not "dramatically ambiguous." *See id.* at 16. Additionally, the Bankruptcy Court held that NSJS failed to demonstrate that it relied on Judge Gargotta's decision regarding the absence of derivative claims. *See id.* at 17. For each of these rulings, the

Bankruptcy Court relied on an understanding that the Western District Adversary Case had actually been remanded prior to entry of the Confirmation Order. This chronology is clearly erroneous.

On February 16, 2012, Judge Gargotta issued a two-page Order holding that mandatory abstention applied and remanding the case to state court. In the February 2012 Order, Judge Gargotta did not address whether NSJS's claims were derivative. Before the case could be remanded to state court, Debtors filed a Motion for Reconsideration on February 23, 2012. The Confirmation Order was entered on May 20, 2012. On June 4, 2012, more than two weeks after the Confirmation Order was entered, Judge Gargotta issued his Order denying the Motion for Reconsideration and holding, for the first time, that the claims in the Adversary Case were non-derivative. The Adversary Case was then remanded and was officially closed on June 20, 2012.

At the time the Confirmation Order was entered, the Adversary Case was still open in the Western District Bankruptcy Court, which had not yet held that the claims therein were non-derivative. During the 45-day period during which NSJS was required by the Confirmation Order to file an amended complaint, the Adversary Case was remanded to state court. As a result, there was no pending Adversary Case in which to file the amended complaint required by the Confirmation Order.

Additionally, NSJS was required by the Confirmation Order to delete derivative claims which Judge Gargotta held did not exist. Under these circumstances, given the correct chronology, NSJS's failure to file an amended complaint in a closed Adversary Case to delete derivative claims that the court in which that Adversary Case had been pending held did not exist constitutes excusable neglect. On this basis also, the 2015 Order requiring NSJS to dismiss the State Court Lawsuit is reversed and vacated.

## VI. CONCLUSION AND ORDER

For all of the reasons stated herein, it is hereby

**ORDERED** that the Bankruptcy Court's Memorandum Opinion [Doc. # 204 in BR 11-38928] and Order [Doc. # 205 in BR 11-38928] are **REVERSED and VACATED**.

SIGNED at Houston, Texas, this 11th day of **September, 2015**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE